IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| ANTHONY CRENSHAW, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:15-CV-413-WKW |
| | ) | |
| CITY OF WETUMPKA, AL, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | | |
| | | |
| CECELIA DIXON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:15-CV-696-WKW |
| | ) | |
| CITY OF WETUMPKA, AL, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

In this consolidated action against the City of Wetumpka, Plaintiff Cecelia Dixon, the former chief of police for the Wetumpka Police Department, asserts gender and age discrimination claims pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §§ 2000e to 2000e-17, and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 to 634.   Plaintiff Anthony Crenshaw, the former deputy chief for the police department, brings a Title VII retaliation claim.   *See* 42 U.S.C. § 2000e-3.   After discovery, Defendant filed

a motion for summary judgment on all claims (Doc. # 21), and the parties briefed the motion.   In the Report and Recommendation, filed pursuant to 28 U.S.C. § 636(b), the Magistrate Judge recommends the denial of Defendant's summary judgment motion.   (Doc. # 38.)   Defendant filed an objection to the Recommendation (Doc. # 39) to which Plaintiffs replied (Doc. # 41).

After an independent and *de novo* review of those portions of the Recommendation to which Defendant objects, *see* § 636(b), the court adopts the Magistrate Judge's Recommendation as to Dixon's claims, but with additional discussion on the issue of Dixon's status as an "employee" under Title VII and the ADEA.   Furthermore, the Recommendation is due to be adopted as to the recommended decision on Crenshaw's claims, with the exception that the court finds that Crenshaw abandoned his Title VII claim that he suffered retaliation when he was placed on administrative leave.   The motion for summary judgment will be granted on this claim only and otherwise will be denied.

## I.   STANDARD OF REVIEW

A party's timely written objections to a magistrate judge's report and recommendation require this court's *de novo* review of those portions of the report to which the party objects.   *See* 28 U.S.C. § 636(b); *see also Marsden v. Moore*, 847 F.2d 1536, 1548 (11th Cir. 1988) ("Frivolous, conclusive, or general objections

need not be considered by the district court."). After completing its review, applying the same standard as the magistrate judge, the court may accept, reject, or modify the report, in whole or in part. *See* 28 U.S.C. § 636(b).

## II.   BACKGROUND

Dixon served as the chief of police for the City of Wetumpka from February 2009 until October 2014. The Council of the City of Wetumpka ("city council"), whose members are elected and include the mayor, voted unanimously to appoint Dixon as chief of police for the City of Wetumpka on February 20, 2009, and again on January 22, 2013. (Doc. # 21-1 (Feb. 20, 2009 city council minutes); Doc. # 21-4 (Jan. 22, 2013 city council minutes).) The next year, on September 11, 2014, the city council convened a special meeting to consider Dixon's termination for alleged improprieties uncovered in an outside investigation of internal complaints lodged against her and her deputy chief (Crenshaw). At that meeting, the city council voted to provide notice to Dixon of proposed discipline up to and including termination as chief of police. The minutes from the September 11, 2014 meeting indicate that, after receipt of notice, Dixon would have ten days to request a hearing before the city council. (Doc. # 21-6 (Sept. 11, 2014 city council minutes).) After a publicly held pre-disciplinary hearing, the city council voted to terminate Dixon as chief of police, effective immediately. (Doc. # 21-16 (Oct. 2, 2014 city council

minutes).)   Dixon contends that her termination was a pretext and that the council members, at the mayor's direction, actually dismissed her because she is female and over the age of forty, in violation of Title VII and the ADEA.

Crenshaw began serving as Dixon's deputy chief in April 2009.   In July 2014, he was placed on paid administrative leave, pending the results of the outside investigation.   The adverse findings of the investigation resulted in Crenshaw's demotion to a lieutenant within the police department in November 2014. Crenshaw contends that his demotion was in retaliation for his refusal to assist the mayor in his plan to get rid of Dixon because the mayor did not want a female, especially an older female, to serve as the chief of police.   He brings his claim under Title VII.

Because the factual background is set forth in detail in the Recommendation, it is not necessary to recite all of the facts here.   Other relevant facts are discussed in the analysis of the objections and the Recommendation.

## III.   DISCUSSION

### A.   <u>Defendant's Motion for Summary Judgment on Dixon's Claims</u>

The Recommendation concludes that "summary judgment would be improper on the issue of Dixon's status as an 'employee' and whether her position comes

within the policy maker exception to Title VII and the ADEA."   (Doc. # 38, at 14.) Defendant objects to this conclusion, but the objections are due to be overruled.

Dixon alleges that Defendant terminated her employment as chief of police because of her age and gender in violation of Title VII and the ADEA.   Only an "employee" can bring an action under Title VII and the ADEA.   These statutes define an "employee" as "an individual employed by the employer."[1] 42 U.S.C. § 2000e(f) (Title VII); 29 U.S.C. § 630(f) (ADEA).   There are four express exemptions to the "employee" definition, including an exemption for an elected official's "appointee on the policy making level."   42 U.S.C. § 2000e(f); 29 U.S.C. § 630(f).   But this exemption does not apply if the appointee is "subject to the civil service laws of a State government, governmental agency or political subdivision." 42 U.S.C. § 2000e(f); 29 U.S.C. § 630(f).   In other words, an "employee" under Title VII and the ADEA includes an appointee on the policy making level who is subject to state or local governmental civil service laws, but it does not include an appointee on the policy making level who is *not* subject to the civil service laws.

"[A] plaintiff's status as an employee under Title VII is a question of federal, rather than of state, law . . . ."   *Calderon v. Martin County*, 639 F.2d 271, 272–73

---

[1] Because Title VII and the ADEA contain virtually identical definitions of "employee," the Magistrate Judge correctly observed that the analysis, for purposes of resolving these consolidated cases, is the same under both statutes.

(5th Cir. Mar. Unit B 1981).   However, "[s]tate law is relevant insofar as it describes the plaintiff's position, including his duties and the way he is hired, supervised and fired."   *Id.* at 273.

Defendant urged the Magistrate Judge to find that the Wetumpka chief of police fits within the policy making appointee exception to "employee" status under Title VII and the ADEA.   Dixon countered that, as chief of police, she was subject to the civil service laws of the State of Alabama, at least insofar as concerns disciplinary actions, and, thus, was an employee under Title VII and the ADEA. Alternatively, Dixon argued that a policy making appointee must "advise an elected official in the exercise of Constitutional powers," which Dixon says she did not do as chief of police.   (Doc. # 23, at 16.)

In the Recommendation, the Magistrate Judge observed that there appeared to be no dispute that Dixon was an "appointee."   (Doc. # 38, at 13.)   He found, however, that there was a genuine dispute of material fact "as to the nature of Dixon's position and her actual role" and that, therefore, summary judgment was inappropriate.   (Doc. # 38, at 14.)   Furthermore, the Magistrate Judge also concluded that the evidence was too barebones to discern whether the position of chief of police was subject to the civil service laws, referencing the one-page excerpt from the City of Wetumpka's Personnel Rules (Doc. # 23-10) and given the absence

of clear and controlling law on the issue.   (Doc. # 38, at 10–12.)   Defendant objects to these findings, but the Recommendation is correct.

Whether Dixon falls within the Title VII/ADEA "employee" exemption for policy making appointees raises two questions.   The first is whether Dixon occupied an appointed position on the policy making level, and, if so, the second is whether Dixon's position of chief of police is subject to the City of Wetumpka's civil service laws.   However, to understand fully why the Recommendation did not err in concluding that summary judgment should be denied on the issues of whether Dixon was an appointee on the policy making level and whether she was subject to the civil service laws of the City of Wetumpka, it is helpful to discern the parties' burdens under Title VII and the ADEA to demonstrate Dixon's status as an "employee."   The burden of proof is an issue untouched in the summary judgment briefing.

### 1.   *Burden of Proof*

Title VII and the ADEA define an "employee" as "an individual employed by an employer," but then lists four exemptions to that definition and ends with a "civil service" exception to the four exemptions.   42 U.S.C. § 2000e(f) (Title VII); 29 U.S.C. § 630(f) (ADEA).   Three things are subject to proof:   (1) whether Dixon was an "employee"; (2) whether she was exempt from employee status as an

7

appointee on the policy making level; and (3) whether Dixon was subject to the civil service laws.

### a.    Employee

Dixon bears the burden of demonstrating that she meets the general definition of an "employee" under Title VII and the ADEA.    In other words, whether Dixon was an "individual employed by an employer" is an element of her prima facie case.[2] This finding is consonant with the U.S. Supreme Court's decision in *Arbaugh v. Y&H Corp.*, 546 U.S. 500 (2006).    There, the Court held that Title VII's definition of an "employer," which includes only those entities with fifteen or more employees, "is an element of a plaintiff's claim for relief, not a jurisdictional issue."    *Id.* at 516. Title VII defines "employee" in the same section, § 2000e, that it defines "employer," which was addressed in *Arbaugh*.    Consequently, the term "employee" would seem to serve a similar function to that of "employer" for purposes of a plaintiff's prima facie case.    For this reason, it seems unlikely that the Court would treat the term "employee" different from the term "employer" for purposes of a plaintiff's prima facie case.    And because the ADEA's definition of "employee" parallels Title VII's definition, the same conclusion is reached as to a plaintiff's proof on an ADEA claim.

---

[2] Defendant has not argued on summary judgment that Dixon did not satisfy the general definition of "employee."

### b.    Exemptions

As for the exemptions, the court uncovered no Eleventh Circuit decision addressing which party bears the burden of proving the exemptions to Title VII's or the ADEA's definition of "employee."    Whether Dixon or Defendant must prove the exemptions turns on whether the exemptions are part of an employee's prima facie case or are affirmative defenses that the employer must plead and prove.

"An affirmative defense raises matters extraneous to the plaintiff's prima facie case."    *In re Rawson Food Serv., Inc.*, 846 F.2d 1343, 1349 (11th Cir. 1988) (citation omitted).    The Eleventh Circuit has recognized that cases "have generally treated statutory exceptions from remedial statutes as affirmative defenses." *Jackson v. Seaboard Coast Line R.R. Co.*, 678 F.2d 992, 1013 (11th Cir. 1982) (collecting cases and holding that the § 703(h) (bona fide seniority system) exemption of Title VII is an affirmative defense).    The statutory provisions in Title VII and the ADEA that define "employee" carve out four exemptions to the definition of "employee"; thus, where the exemption applies, the "employee" has no remedy under either statute.    These exemptions fall within the Eleventh Circuit's general observation in *Jackson*.

Moreover, the Fifth Circuit has reasoned—persuasively—that the personal staff exemption (one of the four "employee" exemptions) "is an affirmative defense

that must be pleaded under [Federal Rule of Civil Procedure] 8(c)" because it "allows the defendant to avoid liability even if the plaintiff meets his burden of proof under Title VII." *Oden v. Oktibbeha County, Mississippi*, 246 F.3d 458, 467 (5th Cir. 2001) (citing *Teneyuca v. Bexar County*, 767 F.2d 148, 152 (5th Cir. 1985)). Hence, the *Oden* court held that the employer bears the burden of demonstrating that the personal staff exemption applies. *See id.* The Fifth Circuit's reasoning, which is persuasive, also applies to the policy-making–appointee exemption. This court is not the first to follow the *Oden* court's lead. *See Donatello v. County of Niagara*, No. 15-CV-39V, 2016 WL 3090552, at *9 (W.D.N.Y. June 2, 2016) ("The Court will treat the [Title VII "employee"] exemptions as affirmative defenses." (citing *Oden*, 246 F.3d at 467)); *accord Hindman v. Thompson*, 557 F. Supp. 2d 1293, 1301 (N.D. Okla. 2008). And the court concurs with the *Donatello* court that categorizing the exemptions as affirmative defenses "does not conflict with *Arbaugh*'s treatment of Section 2000e(b)" because "[t]he 15-employee threshold is part of the main definition in Section 2000e(b), not an exemption." 2016 WL 3090552, at *9.

Accordingly, Defendant, who has pleaded the policy making-appointee exemption as an affirmative defense (*see* Doc. # 4, ¶ 32 (Answer)), bears the burden

of proving that Dixon, when serving as the chief of police, was an appointee on the policy making level.

### c.      Exception to Exemptions

Dixon seeks to avoid a finding that she is an "appointee on the policy making level" by arguing that she was an "employee subject to the civil service laws" of the City of Wetumpka.   42 U.S.C. § 2000e(f).   The parties also have not addressed which party bears the burden of proving the civil service exception to the policy-making–appointee exemption, and this court's independent research uncovered no on-point, controlling case law.[3]   However, the answer lies largely in logic.

First, the court is aware of no Eleventh Circuit decision, and the parties' briefing cites none, that has required a Title VII or ADEA plaintiff to demonstrate that his or her position is subject to the civil service laws as part of the prima facie proof of "employee" status.   *See Cuddeback v. Fla. Bd. of Educ.*, 381 F.3d 1230, 1234 (11th Cir. 2004) ("[T]his circuit has adopted the 'economic realities' test to determine whether a Title VII plaintiff is an employee.").   Second, whether a Title

---

[3] Case law is sparse to non-existent.  *See, e.g., Southard v. City of Oronogo*, No. 12-05027-CV-SW-SWH, 2013 WL 352943, at *3 (W.D. Mo. Jan. 29, 2013) (finding that the defendant adequately pleaded the [Fair Labor Standards Act's ("FLSA")] "employee" exemption for an elected official's staff where the defendant alleged "that plaintiff may not have been an employee eligible for overtime under federal or state law or regulations as plaintiff was appointed by the mayor/board of alderman, was not subject to civil service laws, and was employed by the Board of Alderman").

VII or ADEA plaintiff is subject to the civil service laws becomes relevant only after the employer demonstrates that the plaintiff is an appointee on the policy making level or falls within one of the other three exemptions to the definition of "employee."   Requiring plaintiffs to plead and prove that they are subject to state or local governmental civil service laws as part of their case in chief would make little sense because the exception arises only after the employer invokes the exemption.   For that reason, the court finds that whether Dixon is subject to the City of Wetumpka's civil service laws is a component of the City's affirmative defense.

Because Defendant bears the burden of proof on its affirmative defense, at summary judgment, Defendant must demonstrate the absence of a genuine dispute of material fact on the elements of its affirmative defense.   *See United States v. Four Parcels of Real Prop. in Greene & Tuscaloosa Ctys. in the State of Ala.*, 941 F.2d 1428, 1438 (11th Cir. 1991) ("When the *moving* party has the burden of proof at trial, that party must show *affirmatively* the absence of a genuine issue of material fact: it 'must support its motion with credible evidence . . . that would entitle it to a directed verdict if not controverted at trial.'" (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986) (Brennan, J., dissenting)).   The court examines Defendant's objections in light of these parameters.

12

###### 2.   *Whether Dixon, as Chief of Police, Was an Appointee on the Policy Making Level*

Defendant objects to the Magistrate Judge's recommended denial of summary judgment on the issue of whether Dixon, as chief of police, was an "appointee on the policy making level."   It contends primarily that the Magistrate Judge "appli[ed] an erroneous [legal] standard."   (Doc. # 39, at 2.)   The objections, which are threefold, do not identify any error in the Recommendation.

First, Defendant contends that, as to the responsibilities of the job of chief of police, the Recommendation improperly focuses on Dixon's argument that the formulation of policy must pertain to the "'exercise of the Constitutional or legal powers of the office.'"   (*See* Doc. # 38, at 13–14 (quoting Doc. # 23, at 16).)   The formulation of policy, according to Defendant, need not pertain to the exercise of such powers.   The Recommendation noted Dixon's argument—that she contended that she was not an "'adviser' to either the [City] Council or the Mayor 'with respect to the exercise of the Constitutional or legal powers of the office'" (Doc. # 23, at 16; Doc. # 41, at 3–4)—but the Recommendation did not resolve it.   Although the court finds persuasive the Tenth Circuit's holding that, under the plain-language doctrine, the four exemptions in § 2000e(f) are separate and distinct,[4]  meaning that Dixon's

---

[4] *See Kelly v. City of Albuqurque*, 542 F.3d 802, 808 (10th Cir. 2008) (holding that, "[p]ursuant to the plain language of [§ 2000e(f)], the exemptions are distinct" and criticizing the

argument conflates two statutory exemptions,[5] the Recommendation does not appear to adopt Dixon's argument.   Hence, this court cannot say that the Recommendation erred when it noted, but neither accepted nor rejected, the argument.

Second, Defendant argues that the focus of the inquiry when examining the job responsibilities of a potential policy making appointee is "not necessarily on the specific duties undertaken by the individual," contrary to the Recommendation's finding, but rather "on what is required of the position itself."   (Doc. # 39, at 5.) This court has recognized that "the proper inquiry relates not to the powers exercised by the plaintiff, but to the powers inherent in the position occupied by the plaintiff." *Blevins v. City of Tuskegee, Alabama*, No. 3:09-cv-137, 2010 WL 2541147, at *5

---

employer's argument as "intermingl[ing] the four distinct exemptions, creating an overarching personal staff exemption"); *see also Nichols v. Hurley*, 921 F.2d 1101, 1108 (10th Cir. 1990) ("[F]our *separate* categories of people are not covered by Title VII or the FLSA."); *see also United States v. Townsend*, 630 F.3d 1003, 1010 (11th Cir. 2011) ("[W]ith questions of statutory interpretation, [the] inquiry begins with the plain language of the statute.").

[5] Dixon also cites *EEOC v. Reno*, 758 F.2d 581 (11th Cir. 1985), as supporting her position that an appointee on a policy making level must formulate policy concerning the "constitutional and legal powers" of the appointing authority.   *Id.* at 584.   In *Reno*, the Eleventh Circuit held that an assistant state attorney fell within the personal staff exception of the ADEA's definition of "employee."   *Id.*   Although some of the language in *Reno* sweeps broadly, Defendant is not arguing that Dixon is a member of the city council's personal staff.   *Reno* is distinguishable because its holding did not address the exemption at issue in this case.   *But see Rutland v. Moore*, 54 F.3d 226, 230 (5th Cir. 1995) ("Courts have failed, at times, to identify specifically which of the four § 630(f) exemptions is applicable, ofttimes applying a generic 'personal staff' exemption to any § 630(f) exemption." (citing *Reno*, 758 F.2d at 581)).

(M.D. Ala. June 18, 2010) (citing *Heck v. City of Freeport*, 985 F.2d 305, 309 (7th Cir. 1993)).   Hence, the issue is whether the plaintiff "occup[ied] a position with inherent discretionary powers."   *Id.*   The Recommendation concluded that Defendant's summary judgment motion should be denied based upon, at least in part, disputes in the evidence as to Dixon's "actual role" as chief of police.   (Doc. # 38, at 14.)

Even if the Recommendation reflects an erroneous application of the law, Defendant has not shown that the outcome is wrong.   This leads to Defendant's third argument.   Defendant says that the record is "fully developed with documentary evidence and testimony" (Doc. # 39, at 3–4), but Defendant fails to demonstrate what evidence shows, as a matter of law and without dispute, that Dixon's appointed position as chief of police was "on a policy making level."[6] (Doc. # 39, at 3–4.)   Defendant points to (1) Dixon's deposition testimony for its argument that Dixon "formulated policy" and (2) the job description for the chief of police to "establish[ ] that it was [Dixon's] duty to develop 'departmental rules and

---

[6] As discussed in the Recommendation, and as this court found in *Blevins*, 2010 WL 2541147, at *5, three factors are particularly relevant to whether an employee is an "appointee on a policy making level": (1) "whether the [appointee] ha[d] discretionary, rather than solely administrative powers"; (2) "whether the [appointee] serve[d] at the pleasure of the appointing authority"; and (3) "whether the [appointee] formulate[d] policy."   *Id.* (citing *Stillians v. Iowa*, 843 F.2d 276, 278 (8th Cir. 1988) (analyzing the definition of "employee" in the ADEA), *abrogated on other grounds*, *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104 (1991)).

policies.'"   (Doc. # 39, at 5 (citing Doc. # 21-7, at 38, 43, 48 (Dixon's Dep.); Doc. # 21-18 (City of Wetumpka Classification Description for the Chief of Police).)

The cited portions of the deposition testimony are conclusory.   To illustrate, the questioning begins with, "I figured you made policy," and ends with, "I did." (Doc. # 21-7, at 38; *accord* Doc. # 21-7, at 43.)   There are no follow-up questions or explanations concerning even the generic types of policies Dixon formulated. And the job description is not illuminative because the duty—"develop[ing] department rules, policies, and procedures"—is not listed in the job description's "basic functions and responsibilities" for the chief of police.   It is in a different section that lists *potential* job duties that make up the "essential functions" of the position for purposes of the Americans with Disabilities Act ("ADA").   (Doc. # 21- 18, at 1 (providing that "[t]he essential functions, pursuant to the [ADA], *may* include the . . . duties . . . detailed below," but "*may not* include all the duties listed," and then listing as one of the duties "develops department rules, policies, and procedures" (emphasis added).)   That the job of chief of police "may" or "may not" include policy making obviously does not show that the chief of police makes policy. The job description, in and of itself, is ambiguous as to whether developing policies is a component of the position of the job of chief of police.   Nor does it illuminate whether Dixon was "'on the policymaking level.'"   *Gregory v. Ashcroft*, 501 U.S.

16

452, 466–67 (1991) (citing "employee" definition in the ADEA).   That ambiguous evidence, in conjunction with Dixon's conclusory deposition testimony, fails to sustain Defendant's burden to "show affirmatively the absence of a genuine [dispute] of material fact . . . with credible evidence . . . that would entitle it to a directed verdict if not controverted at trial."   *Four Parcels of Real Prop.*, 941 F.2d at 1438.

Moreover, Defendant's objection addresses only one of multiple factors relevant to whether an employee is an "appointee on the policy making level."   *See Blevins*, 2010 WL 2541147, at *5.   Developed analysis of these factors is missing, and Defendant's original summary judgment briefing does not fill that void.   In its briefing on the issue, which was before the Magistrate Judge, Defendant devotes less than a dozen lines to the discussion of these factors, and those lines consist largely of broad statements that are devoid of analysis.   (*See, e.g.*, Doc. # 22, at 15–16 ("Chief Dixon exercised discretionary powers over the police department, as demonstrated by the job description duties and responsibilities for that position, as well as her own testimony." (citing no supporting evidence).)   It is not the court's function, or the Magistrate Judge's, "to weed through the summary judgment submissions in search of evidence to support [Defendant's] [affirmative defenses]."

17

*Byrne v. Ala. Alcoholic Beverage Control Bd.*, 635 F. Supp. 2d 1281, 1297 n.16 (M.D. Ala. 2009) (citation omitted).

In sum, the summary judgment record is insufficient to allow Defendant to carry its burden of proof and show "affirmatively the absence of a genuine [dispute] of material fact" on summary judgment. *Four Parcels of Real Prop.*, 941 F.2d at 1438. Accordingly, the Recommendation did not err in concluding that Defendant's motion for summary judgment should be denied on the issue of whether Dixon was an appointee on the policy making level.

### 3.    *Whether Dixon Was Subject to the City's Civil Service Laws*

The Magistrate Judge determined that, based upon the limited evidentiary record, he was "unable to determine on this motion [for summary judgment] the applicability of the civil service law exception to the appointee exemption." (Doc. # 38, at 12.) The Magistrate Judge's recommended decision to deny Defendant's motion for summary judgment is correct. Further elaboration will shed light on why the summary judgment record is inadequate and will aid in the parties' trial preparations. Hence, the Recommendation is due to be adopted, on this point, with the following additional discussion.

To begin, the Magistrate Judge is correct that the lack of a developed record on summary judgment impeded a reasoned decision.   Because the parties failed to flesh out the law, their arguments are somewhat misdirected.

Neither Title VII nor the ADEA defines the phrase "subject to the civil service laws," and the parties do not cite any case law defining or analyzing this phrase. There is regulatory help, however, that the briefing omits.   The definition of "employee" under the FLSA, 29 U.S.C. §§ 201 to 219, also contains this phrase, and the Secretary of Labor has promulgated a regulation defining "subject to the civil service laws."   This definition is instructive as to the sort of state laws that are "civil service laws."   *Cf. Nichols v. Hurley*, 921 F.2d 1101, 1103 (10th Cir. 1990) (recognizing that "the definition of 'employee' under the FLSA is essentially identical to that under Title VII" and, thus, looking to Title VII for guidance on whether an "employee" exemption applies).   The Secretary of Labor's regulation provides:

> The term "civil service laws" refers to a personnel system established by law which is designed to protect employees from arbitrary action, personal favoritism, and political coercion, and which uses a competitive or merit examination process for selection and placement. Continued tenure of employment of employees under civil service, except for cause, is provided.

29 C.F.R. § 553.11(c).   Discussing section 553.11(c), one treatise has observed that the civil service laws generally feature:   (1) a competitive or merit promotion

system, and (2) protection from arbitrary dismissal.   2 Compensation & Benefits § 21:4.

Hence, Defendant must prove at trial (and show the absence of a genuine dispute of material fact at summary judgment) that Dixon, as chief of police, was subject to the city's personnel laws that create the type of protections set out above.

First, as to the methods the city council used to advertise and select applicants to fill the position of chief of police, Defendant's arguments are sparse as to what degree merit and competition played a role in the process.   All that Defendant points out is that, in 2009, Dixon was one of three candidates for the position of chief of police (Doc., # 22, at 1–2), and the record shows that these three candidates did not come from within the Wetumpka Police Department (Doc. # 21-7, at 27, 28, 160).   It also can be implied that there were no other serious candidates when the city council reappointed Dixon as chief of police in 2013.   (Doc. # 22, at 2.) Second, even if it is assumed that this evidence indicates a lack of a competitive or merit promotion system, something the court need not decide, Defendant has not shown the absence of a genuine dispute of material fact on the question whether Dixon had protections from arbitrary dismissal.   Some fleshing out of the law is necessary here.

Alabama law requires the City of Wetumpka to have "an acceptable civil service merit system governing the appointment, removal, tenure, and official conduct of its law enforcement officers."   Ala. Code § 11-43-180.   The chief of police is, by statutory definition, a "law enforcement officer," *see id.* § 11-43-231, but there is a caveat to coverage:   "The merit system may exempt from its provisions the chief of police . . . ."   *Id.* § 11-43-187.   Even where a merit system includes the exemption, another Alabama statute—embodied in Article 11 of Title 11 and titled "Due Process for Municipal Law Enforcement Officers"— requires every municipality to "provide a predisciplinary hearing prior to the suspension or termination of its law enforcement officers."   *Id.* § 11-43-230(a), (b).

The City of Wetumpka has adopted a personnel policy manual, which provides rules for personnel procedure in the areas mandated by section 11-43-180. Section 4.0, the sole policy excerpt that the parties provided, delineates which city employees are covered by the progressive disciplinary policy.   Employees to whom the progressive disciplinary policy does not apply include "unclassified employees," as these employees "serve at the will of the City."   Section 4.0 also recognizes that law enforcement officers have limited due process rights concerning their termination; it provides that "any law enforcement officers, as defined under Alabama Code Section 11-43-231, shall be afforded the same due process as

classified employees as it relates to disciplinary action and rights of appeal, in accordance with Alabama Code Section 11-43-230 and Attorney General Opinion 2002-064." (Doc. # 23-10.)   Moreover, as Defendant points out, the chief of police is subject to removal by the city council only "for incompetency, malfeasance, misfeasance, or nonfeasance in office and for conduct detrimental to good order or discipline, including habitual neglect of duty."   Ala. Code § 11-43-160.

Defendant contends that Dixon was not "subject to the civil service laws" because the City of Wetumpka has designated the chief of police as an "unclassified-exempt" position.   (Doc. # 39, at 3.)   Defendant points to its summary-judgment submission of the City of Wetumpka's classification description for the chief of police.   (Doc. # 39, at 4 (citing Doc. # 21-18).)   Dixon has not disputed the categorization of her position as "unclassified-exempt."   However, citing section 4.0, Dixon contends that "[t]he due process requirements of Article 11 are state laws applicable to the civil service of law enforcement officers."   (Doc. # 41, at 3.)   Dixon contends that these due process requirements are "civil service laws" and, therefore, that she is "subject to the civil service laws" (or at least "subject to" the rules pertaining to disciplinary action).   Defendant does not dispute that Dixon, as chief of police, was entitled to the mandatory due process protections afforded by Alabama statute to all law enforcement officers, but Defendant contends that the due

process protections and civil service laws "are separate and distinct."   (Doc. # 39, at 3.)

At bottom, these arguments sweep broadly.   They fail to focus on the components of civil service protection that federal law deems significant. Refocusing the inquiry, the arguments demonstrate Defendant's inability to demonstrate the absence of a genuine dispute of material fact that Dixon does not have protection from arbitrary dismissal.   As set forth above, Dixon has shown that she had at least some protections from arbitrary dismissal.   Additionally, as the Magistrate Judge observed, Defendant "has not provided the court, nor has this court's research found, any case based on Alabama law that expressly excludes a chief of police from Title VII's definition of 'employee.'"   (Doc. # 38, at 13.)   The facts and the law (or, more precisely, their absence) counsel against the grant of summary judgment in Defendant's favor.

An independent ground also supports the denial of the motion for summary judgment.   Defendant argued in its opening summary-judgment brief that Dixon was not an "employee" under the policy-making–appointee exemption to Title VII's and the ADEA's definition of "employee."   But Defendant did not address or mention the second part of its affirmative defense, namely, whether Dixon was "subject to the civil service laws."   42 U.S.C. § 2000e(f).   It did not discuss this

issue until it filed its reply brief (Doc. # 28), and the court is under no obligation to consider an argument raised for the first time in a reply brief.   Accordingly, by omission, Defendant failed to raise a genuine dispute of material fact on an element essential to its affirmative defense.   For this additional reason, Defendant's motion for summary judgment on the "employee" exemption affirmative defense is due to be denied, and the Recommendation is due to be adopted.

**B.**     **Defendant's Motion for Summary Judgment on Crenshaw's Claims**

The Recommendation found that Crenshaw raised a genuine dispute of material fact as to whether he suffered an adverse employment action when he was placed on paid administrative leave pending the outcome of the investigation. (Doc. # 38, at 21–22.)   Defendant emphasizes that Crenshaw neglected to address this argument in his summary-judgment response and instead focused solely on his demotion as the retaliatory adverse action.   For the reasons that follow, Crenshaw has abandoned reliance on a retaliation claim predicated on his placement on paid administrative leave.

"When a party moves for final, not partial, summary judgment," as Defendant has done here, "it becomes incumbent upon the nonmovant to respond by, at the very least, raising in their opposition papers any and all arguments or defenses they felt precluded judgment in the moving party's favor."   *Case v. Eslinger*, 555 F.3d 1317,

1329 (11th Cir. 2009) (quotation and alterations omitted)).   "[G]rounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned." *Resolution Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995).

In its brief in support of summary judgment, Defendant challenged Crenshaw's retaliation claim that relied upon his suspension with pay as the adverse employment action.   (*See* Doc. # 22, at 10–11 ("[A] suspension with pay pending an investigation of misconduct is not an adverse employment action." (collecting cases).)   In his response to the summary-judgment motion, Crenshaw did not mention his suspension with pay as an employment action that he deemed adverse for purposes of his Title VII retaliation claim.   Thus, he raised no argument for avoiding summary judgment on this claim.   Rather, he mentioned only his demotion.   (Doc. # 23, at 21 ("There is little question that Crenshaw received an adverse employment action; he was demoted from Deputy Chief to Lieutenant.").)   Crenshaw takes the same tact in responding to Defendant's objection.   (*See* Doc. # 41, at 15 (declining to "argue the issue" of whether paid administrative leave is an adverse employment action because Crenshaw's demotion was an adverse employment action that Defendant does not contest).)

Based on this record, the court finds that Crenshaw has abandoned a Title VII retaliation claim arising from being placed on paid administrative leave.

Accordingly, the Magistrate Judge's Recommendation is due to be rejected to this limited extent.

## C.   **Defendant's Other Objections**

Defendant raises other objections to the Magistrate Judge's recommended decision on both Dixon's and Crenshaw's claims.   All of those objections have been carefully considered, but they are without merit and warrant no discussion. Those objections are overruled.

## IV.   CONCLUSION

For the foregoing reasons, it is ORDERED as follows:

(1)   Defendant's objections (Doc. # 39) are OVERRULED, and the Recommendation (Doc. # 38) is ADOPTED, except as to Crenshaw's Title VII retaliation claim arising from his placement on paid administrative leave.

(2)   Defendant's motion for summary judgment (Doc. # 21) is GRANTED as to Crenshaw's Title VII retaliation claim arising from his placement on paid administrative leave, but otherwise is DENIED.

DONE this 29th day of September, 2017.

_____  /s/ W. Keith Watkins  _____
CHIEF UNITED STATES DISTRICT JUDGE